UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| HARRISON HARRIES<br><br>             Plaintiff,<br><br>   v.<br><br>TURBINE CONTROLS, INC.<br><br>             Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      The Plaintiff, Harrison "Tim" Harries ("Mr. Harries" or the "Plaintiff"), is a 67-year-old male resident of the state of Connecticut, residing at 62 Ridgebrook Drive, West Hartford, Connecticut, 06107. West Hartford is in Hartford County.

2.      Defendant Turbine Controls, Inc. (the "Company" or the "Defendant") is a domestic for-profit corporation doing business in the state of Connecticut.  The Company is incorporated in Connecticut and its principal office is located at 5 Old Windsor Road, Bloomfield, CT 06002.

### JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought a claim pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634. The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

4.         This court has personal jurisdiction over the Defendant because the Defendant is a resident of the State of Connecticut.  Further, the Defendant has engaged in and transacted business in the State of Connecticut, including by managing and/or operating a business in Connecticut and/or employing the Plaintiff in Connecticut, and Plaintiff's causes of action stem largely from Defendant's business transactions within the State of Connecticut.  Indeed, the Plaintiff was employed by the Defendant in the State of Connecticut, was managed and supervised by Defendant in the State of Connecticut, was discriminated against and harassed by the Defendant in the State of Connecticut and was terminated by the Defendant in the State of Connecticut.

## STATEMENT OF FACTS

5.         In or around September 2005, Mr. Harries was hired as a Senior Process Engineer by Turbine Controls, Inc. (the "Company") to work out of the Company's facility located in Bloomfield, CT.

6.         At all relevant times, the Company employed 20 or more employees for 20 or more weeks during the preceding 12 months.

7.         At all relevant times, Mr. Harries was a qualified employee and his job performance was satisfactory.

8.         During 2020, Mr. Harries was the oldest employee in his department (the engineering department).

9.         In addition to Mr. Harries himself, the Company's engineering department consisted of the now 64-year-old Mike McKenna ("Mr. McKenna"), the now 62-year-old Steven Elliott ("Mr. Elliott"), the now early 50s-aged Dwight Davis ("Mr. Davis"), and two individuals in their 30s, Jacy Edwards ("Mr. Edwards") and Daniel Zapadka ("Mr. Zapadka"). This group

was led by the engineer manager (and Mr. Harries' immediate supervisor), Christopher Bennett ("Mr. Bennett").

10. Upon information and belief, Mr. Bennett is in his 40s.

11. Mr. Bennett would occasionally call Mr. Harries "the old man" of the group, in response to which Mr. Harries repeatedly voiced his displeasure at being referred to using this degrading nickname. These complaints by Mr. Harries constituted protected opposition to harassing comments related to his age. Nonetheless, the harassing comments by Mr. Bennett continued.

12. In addition, a number of other employees of the Company referred to Mr. Harries by clearly age-related derogatory names, including the "old guy," "old man," and "old fart," in front of supervisory employees of the Company. Despite this, these individuals were not reprimanded and were not instructed to cease their discriminatory and harassing behavior.

13. On or around April 13, 2020, Mr. Bennett informed Mr. Harries that Mr. McKenna, Mr. Davis, and Mr. Harries himself would be indefinitely re-assigned to the second shift of the facility. Second shift was typically seen as a less desirable position because the hours consisted of approximately 3:45 p.m. through 12:15 a.m.

14. Notably, Mr. Bennett and/or the Company appointed three of the oldest members of the engineering department to this less than desirable second shift. Importantly, Mr. Harries had more seniority as an engineer in the department than any other employee in the department.

15. Mr. Harries raised protected concerns to Mr. Bennett by questioning how the Company chose which employees to place on this shift. Mr. Harries noted that he had greater seniority than the younger employees who were not re-assigned, and that it appeared that he was being treated in a worse manner by being involuntarily re-assigned to a less desirable shift (along

with other older employees) while other younger employees were allowed to continue on the more desirable shift.

16. Notably, at no time prior had Mr. Harries indicated he wanted to work second shift or requested this shift change.

17. In addition to raising protected concerns, Mr. Harries asked whether shifts could be rotated amongst all members of the group, rather than being assigned to just the older members of the engineering department.

18. However, Mr. Bennett ignored these protected concerns and refused to provide Mr. Harries with any legitimate explanation for why three of the oldest members of engineering department had been assigned the less desirable shift (whereas the other, younger employees in the engineering department were allowed to remain on the more desirable shift).

19. On or around May 28, 2020, Mr. Bennett approached Mr. Harries at work and notified him (Mr. Harries) that the Company had decided to furlough Mr. Harries (without pay) effective June 1, 2020, for approximately one week, allegedly due to a downturn caused by the coronavirus pandemic.

20. Mr. Bennett then told Mr. Harries that he had "found out" that Mr. McKenna might be considering retirement. Mr. Bennett curtly asked Mr. Harries when he (Mr. Harries) planned to retire from the Company.

21. Notably, at no point prior to this had Mr. Harries indicated that he had any plans to retire in the near future.

22. Indeed, by the context, words, tone used, it was clear that Mr. Bennett's comments were an attempt to pressure Mr. Harries to retire.

23. Mr. Harries told Mr. Bennett that he had no plans to retire and would not even consider retirement for many years.

24. Mr. Bennett appeared annoyed by Mr. Harries response, and curtly refused to discuss the matter further. Instead, Mr. Bennett abruptly reiterated that Mr. Harries would be furloughed on an unpaid basis effective on or around June 1, 2020.

25. Notably, none of Mr. Harries' younger, less senior, similarly situated coworkers in his department were scheduled to be furloughed effective June 1, 2020. Indeed, these younger employees in the engineering department were allowed to continue working, and continued receiving full pay and benefits, at the time that Mr. Harries was involuntarily placed on an unpaid furlough.

26. In addition, Mr. Elliott (who was also one of the oldest employees in the department) was furloughed around this same time.

27. Indeed, Mr. McKenna, Mr. Elliott, and Mr. Harries were the only employees furloughed from the engineering department at this time.

28. Notably, Mr. McKenna, Mr. Elliott, and Mr. Harries (each of whom were in their 60s) were the three oldest employees in the engineering department.

29. Furthermore, Mr. McKenna, Mr. Elliott, and Mr. Harries had a longer tenure at the Company than some of the other members of the engineering department who were not furloughed, such as the younger Mr. Zapadka and/or Mr. Davis.

30. It was clear that the decision to furlough Mr. McKenna, Mr. Elliott, and Mr. Harries was not based on seniority or experience and was instead based on discriminatory factors, such as age and/or the fact that Mr. Harries had raised protected concerns previously.

31. Furthermore, in later filings submitted to the Connecticut Commission on Human Rights, the Company produced documents indicating that, while there had been other furloughs in other departments at the Company in the prior month(s), the Company was preparing to return *all* employees to work effective June 1, 2020.

32. The Company was thus preparing to return employees to a normal operating schedule on the very same day it made effective a furlough for Mr. Harries (as well as for Mr. McKenna and/or Mr. Elliott).

33. On or around June 8, 2020, Mr. Harries returned to work following the one-week furlough.

34. On or around June 12, 2020, Mr. Harries received a request from the Company's human resources representative, Taryn Mazejka ("Ms. Mazejka"), demanding that Mr. Harries call the Company before the coming Monday.

35. Ms. Mazejka is a woman in her 40s.

36. Mr. Harries also noticed his Company email login credentials no longer worked for him to access his inbox.

37. On or around June 13, 2020, Mr. Harries called in to the Company and spoke with Ms. Mazejka.

38. Ms. Mazejka abruptly told Mr. Harries that the Company had decided to permanently lay off Mr. Harries from the Company, and that he should arrange to drop off his equipment in the parking lot.

39. Accordingly, Mr. Harries was involuntarily terminated from his employment on or around June 13, 2020.

40. Notably, Mr. Harries was the only member of the engineer department to be permanently laid off by the Company, even though Mr. Harries had seniority over many of his younger, lateral coworkers in the department.

41. In fact, the much younger Mr. Zapadka (who was in his 30's in terms of age) was only hired in or around February 2020 and had the least tenure of any member of the engineering department. Importantly, Mr. Zapadka remained employed with the Company and was not furloughed, permanently laid off, or otherwise terminated.

42. Upon information and belief, Mr. Harries was replaced by a younger employee.

43. Shortly after Mr. Harries's termination, the Company was advertising for engineer positions, which were substantially similar to Mr. Harries's job with the Company.

44. On or around September 4, 2020, Mr. Harries timely filed a Charge of Discrimination (the "Charge") with the Connecticut Commission on Human Rights and Opportunities ("CHRO") (No. 2110045) and the United States Equal Employment Opportunity Commission (Charge No. 16A-2020-01484).

45. On or around January 28, 2021, the State of Connecticut Commission on Human Rights and Opportunities released its jurisdiction.

46. Mr. Harries notified the EEOC of his intent to file a complaint in court and, accordingly, requested that the EEOC release jurisdiction and permit Mr. Harries to file in court.

47. The EEOC released its jurisdiction and issued a Right to Sue on or around January 29, 2021.

48. This Complaint is timely filed in compliance with the timeframes of relevant laws and requirements.

**COUNT I**

**(Discrimination Based on Age in Violation of Conn. Gen. Stat. § 46a-60)**

**Plaintiff v. the Defendant**

49. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

50. The Company is an employer under the definitions applicable to Conn. Gen. Stat. § 46a-60 because the Company employed three or more persons.

51. The Company, by and through its agents, harassed and discriminated against Mr. Harries with respect to his compensation, terms, conditions, or privileges of employment, because of Plaintiff's age (67).

52. More specifically, the Company subjected Mr. Harries to adverse actions because of his age, including, but not limited to, unjustified and/or discriminatory impediments to performance, including by assigning him to more difficult/less desirable shift(s), subjecting Mr. Harries to a harassing and hostile work environment (including harassment of Mr. Harries with offensive comments and/or nicknames related to his age), discriminatorily re-assigning Mr. Harries to a less desirable shift, discriminatorily furloughing Mr. Harries without pay, a discriminatory and/or retaliatory lay off, failure to rehire, restore, and/or re-call from furlough/layoff, and the ultimate termination of Mr. Harries' employment.

53. The Company's actions against Mr. Harries were willful and malicious.

54. As a direct and proximate result of the Company's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

55. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT II

### (Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)

### Plaintiff v. the Defendant

56. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

57. At all relevant times, Mr. Harries was over 40 years old.

58. During all relevant times, the Company was an employer under the Age Discrimination in Employment Act, 29 U.S.C. §§621 et. seq. (hereinafter the "ADEA") because it employed more than 20 persons for 20 or more calendar weeks within the previous 12-month period.

59. The Company, by and through its agents, including Mr. Bennett and/or Ms. Mazejka, harassed and discriminated against Mr. Harries with respect to his compensation, terms, privileges, and/or conditions of employment because of Mr. Harries' age.

60. More specifically, the Company subjected Mr. Harries to adverse actions because of his age, including, including, but not limited to, unjustified and/or discriminatory impediments to performance, including by assigning him to more difficult/less desirable shift(s), subjecting

Mr. Harries to a harassing and hostile work environment (including harassment of Mr. Harries with offensive comments and/or nicknames related to his age), discriminatorily selecting Mr. Harries for a furlough, a discriminatory and/or retaliatory lay off, failure to rehire, restore, and/or re-call from furlough/layoff, and the ultimate termination of Mr. Harries' employment.

61. The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or reckless indifference to the federally protected rights of Mr. Harries.

62. As a direct and proximate result of the Company's violation of the ADEA, Mr. Harries has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

63. Ms. Harries seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, interest, attorney's fees, and costs.

**COUNT III**

**(Retaliation in Violation of Conn. Gen. Stat. § 46a-60)**

**Plaintiff v. the Defendant**

64. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

65. The Plaintiff engaged in protected activity under Conn. Gen. Stat. § 46a-60, including, but not limited to, by expressing protected concerns regarding the harassing and discriminatory actions improperly undertaken by the Company based on the age of the Plaintiff and other employees.

66. The Company retaliated against the Plaintiff and/or discriminated against the Plaintiff for opposing one or more acts or practices made unlawful by Conn. Gen. Stat. § 46a-60, including by subjecting Mr. Harries to adverse actions because of his age, including, but not limited to, unjustified and/or discriminatory impediments to performance, including by assigning him to more difficult/less desirable shift(s), subjecting Mr. Harries to a harassing and hostile work environment (including harassment of Mr. Harries with offensive comments and/or nicknames related to his age), discriminatorily selecting Mr. Harries for a furlough, a discriminatory and/or retaliatory lay off, failure to rehire, restore, and/or re-call from furlough/layoff, and the ultimate termination of Mr. Harries' employment.

67. The Company's actions against Mr. Harries were willful and malicious.

68. As a direct and proximate result of the Company's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

69. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

**(Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)**

**Plaintiff v. the Defendant**

70. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

71. The Plaintiff engaged in protected activity under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., including, but not limited to, by opposing activity that violated the ADEA, as well as by expressing protected concerns, and/or engaging in other protected activity, related to age discrimination.

72. The Company retaliated against the Plaintiff for engaging in such opposition to age discrimination, by subjecting Mr. Harries to adverse actions, including, but not limited to, unjustified and/or discriminatory impediments to performance, including by assigning him to more difficult/less desirable shift(s), subjecting Mr. Harries to a harassing and hostile work environment (including harassment of Mr. Harries with offensive comments and/or nicknames related to his age), discriminatorily selecting Mr. Harries for a furlough, a discriminatory and/or retaliatory lay off, failure to rehire, restore, and/or re-call from furlough/layoff, and the ultimate termination of Mr. Harries' employment.

73. The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Harries' exercising of, or enjoyment of, one or more rights granted by the ADEA.

74. The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Harries.  The Company willfully violated the ADEA.

75. As a direct and proximate result of the Company's violations of the ADEA, Mr. Harries has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

76. Mr. Harries seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.

WHEREFORE, the Plaintiff, Timothy Harries, respectfully requests that this honorable court:

A. Schedule this matter for trial by jury;

B. Find the Defendants liable on all counts;

C. Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay),

D. Award the Plaintiff other monetary damages, including, but not limited to, damages for his diminished earning capacity and injury to reputation;

E. Award the Plaintiff emotional distress damages;

F. Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G. Award the Plaintiff liquidated damages;

H. Award the Plaintiff punitive damages;

I. Award the Plaintiff his reasonable attorneys' fees;

J. Award the Plaintiff interest and costs;

K. Award the Plaintiff all other damages to which he is entitled; and

L. Grant such further relief as is just and equitable.

        Respectfully Submitted,

        Timothy Harries

        By his attorneys,

        THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: April 5, 2021        By:   /s/ Michael R. Varraso

        Benjamin J. Wyatt
        BWyatt@Wyattlegalservices.com
        CT State Bar: 437487
        D. Conn. No.: ct29994

        Michael R. Varraso
        mvarraso@wyattlegalservices.com
        CT State Bar: 439521
        D. Conn. No.: ct307777

        Katherine A. Gabriel

Katherine@Wyattlegalservices.com
CT State Bar: 441352
D. Conn. No.: ct30948

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868